[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF LAW
This custodial dispute, arising within a dissolution action, involves a plaintiff wife, now aged 32, who married at the age of 23, and a defendant husband, now aged 40, who married at the age of 30 in Ridgefield, Connecticut on September 26, 1982, nine years ago. It was her first marriage, his second.
There was one minor child born of this marriage:
Katherine Lynn Drumm, eight years of age, born May 3, 1983.
FINDINGS:
THE FAMILY HOME
Much of the father's testimony centered upon his efforts in building the family home. He contributed a substantial portion of his non-working hours to the many phases of construction. As did his two brothers. As did many of his friends, who also contributed, in some cases, the use of construction equipment.
It dominated defendant father's non-working hours.
Plaintiff mother was not enthusiastic about the project. It kept her husband away from their small family and it absorbed the family's funds. Both parties agree that the construction project created serious problems for the couple.
But husband persisted and, at the time of trial, had spent $222,000 for the purchase of land and for construction costs. The first, second and third mortgages are now $118,076 and unpaid bills incurred in the construction are $92,644, for a current total of $210,720. Mr. Drumm claims it carries a modest fair market value of $200,000. Mrs. Drumm does not dispute that fair market value.
The house remains unfinished. Mr. Drumm estimates completion would cost an additional $30,000, if he, his brothers and friends contribute all the labor. If professionals do the work, it would cost an additional $50,000 approximately.
The house is a financial disaster. It has been a substantial factor in the breakdown of the Drumm marriage. Mrs. Drumm cites it as the prime factor. Yet, in spite of the destructive role it has played, and the financial morass it has become, Mr. Drumm continues to pursue his dream, seeks to retain title and testifies his brother has agreed to purchase a one-half interest in the home for $100,000 and will assume some undefined responsibility for a portion of the taxes, the mortgage and other costs.
The court finds much of the cost of the family home, undertaken CT Page 10641 with force and enthusiasm by Mr. Drumm, was beyond the expectations and the consent of Mrs. Drumm and was beyond the income and financial capacity of the Drumm family. The home absorbed all their available funds, indebted them at high interest rates to Mr. Drumm's brothers and leaves them today with little more than the home as a family asset.
The attorney for Mrs. Drumm refers to the home as "Mr. Drumm's obsession". The court does not find the phrase inappropriate.
OTHER ASSETS
The court finds the family's assets to consist of their automobiles, the modest savings accounts set aside by Mrs. Drumm for Katherine and herself, a $12,000 backhoe purchased by Mr. Drumm to assist in construction and Mr. Drumm's $5746.66 annuity fund.
INCOME
Mrs. Drumm has a gross weekly income of $402.74, including overtime, and a net of $372.73. Mr. Drumm has a gross weekly income of $773.76 and a net of $600.78, after recalculating his financial affidavit. Mr Drumm testified to earning some overtime during November of 1991, yet reported none in his financial affidavit.
CUSTODY
The court finds plaintiff mother was the primary caretaker of Katherine until the parties separated on January 7, 1990, when Mr. Drumm asked her to leave the family home and Mrs. Drumm left with Katherine.
At the point, Mrs. Drumm's relationship with James Karns became intense. Although she refers to their relationship as "friendship", her testimony with regard to Mr. Karns is neither logical, consistent nor credible.
During the months she focused on Mr. Karns, Mrs. Drumm was not the primary caretaker she had been throughout Katherine's first six years. She left her daughter, uncharacteristically, in the care of her parents and in the care of Mr. Drumm many times. Mr. Drumm, also uncharacteristically, expanded his custodial role as Mrs. Drumm intensified her relationship with James Karns. Mr Drumm became Katherine's custodial parent on weekends and on Wednesday evenings until a custodial mediation conference with a team of Family Relations Officers took place during July of 1990. Comments by Family Relations Counselor Linda Piasick prompted Mrs. Drumm to expand her time with Katherine. She eliminated Mr. Drumm's access on Wednesday evenings and reduced his weekend access. She reasserted her primacy. CT Page 10642
Family Relations Counselor Leslie Raider, who met with all the principals as recently as March 1, 1991, recommended that sole custody of Katherine be granted to Mrs. Drumm.
Laurie Ferguson, a social worker and family therapist, testified. She was hired by Mr. Drumm as a counselor and met only with Mr. Drumm and Katherine, and Mr. Drumm's daughter by his previous marriage, during 1990. That she had seen only Mr. Drumm, and not Mrs. Drumm, and that she had no involvement with even that limited portion of the family since 1990, leads the court to find her testimony to be of limited probative value in determining Katherine's current best interests.
Mrs. Drumm testified that Mr. Drumm had a drinking problem but offered no independent verification. FRC Raider dealt with that issue directly with Mr. Drumm and received a response she felt was disturbing. "Mr. Drumm stated he resumed drinking because his `nerves got to him.'" She was concerned that his resumption was triggered by an emotional need.
Mr. Drumm testified that it was not in the best interest of young Katherine to be exposed to Mr. Karns but offered no independent substantiation.
Mrs. Drumm's competence to provide primary care for Katherine does not appear to have been questioned until Mr. Karns made a substantial appearance on the scene. Mrs. Drumm did lose her maternal equilibrium after she left the house. But the facts in this case lead the court to find that this issue of child custody is not to be used as a means of punishing the plaintiff mother for her temporary detour in a lifetime of care. This court is well aware that parents, both mothers and fathers, will often behave inappropriately in the months following the trauma of marital separation. It is a time of extraordinary stress. That behavior, if it is found to be a temporary abberation, should not be used to deprive the minor child of the care of the parent who has met, and who is most likely to continue to meet, her best interests.
Mrs. Drumm did not tell the Family Relations Officer the truth about the intensity or the dates of her affair with Mr. Karns. But Family Relations Officer Raider, when cross examined by counsel for Mr. Drumm, noted that there were not many negatives about either parent. She opined that a clandestine affair such as this, with its undisclosed intensity and dates, where the child was neither directly involved, exposed or jeopardized, would not cause her to change her custodial recommendation.
The court notes that James Karns plays a significant role in the life of the minor child. Yet neither party deposed or subpoenaed Mr. Karns, nor did either party make any information regarding Mr. Karns CT Page 10643 available through any other source. Unfortunate.
This court finds plaintiff wife's involvement with Mr. Karns came at a time when her marriage had already broken down. It was a symptom of that breakdown. Mr. Drumm's strong emotional response to his wife's wanderings was a reflection of this marital unawareness, not of the strength of their union. In his eyes, her behavior caused the breakdown. He was unaware that the duality of their relationship had already crumbled.
The court is aware of the role Kari, the 14 year old daughter of Mr. Drumm by his previous marriage, can should play in Katherine's future welfare. Because Mrs. Drumm has had a substantial role in raising Kari, who joined the Drumm household six years ago, and because Katherine and Kari lived together as sisters for six of Katherine's eight years, it is important that Katherine continue to experience the pleasures of Kari's company. Kari lives, of course, with her father. Mrs. Drumm did not adopt Kari.
The court wishes to express its fervent hope that the adults in their lives will do all within their power to maintain the Katherine-Kari relationship and encourage it to flourish. Katherine's future happiness is dependant on the ability of her mother and father to mature and to communicate with each other as parents. Until they do, they will deprive their young daughter of many of the joys of life.
If Mr. Drumm has hopes of increasing his access to Katherine as she matures, and of increasing his parenting role in her development, it is likely that future courts would look with interest at both his participation in communication and parenting counseling with Mrs. Drumm as well as the on-going growth of the Katherine-Kari relationship. His ability to move beyond his current anger may well become a major factor in his future relationship with Katherine, as will Mrs. Drumm's willingness to participate in that communication and parenting counseling.
ORDERS
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievable, a decree of dissolution shall enter and the following orders shall apply.
1. CUSTODY
Plaintiff mother shall have sole custody of the minor child.
2. ACCESS CT Page 10644
a. Defendant father shall have reasonable rights of access to his daughter, Katherine.
b. Reasonable rights of access shall include, but not be limited to the following:
 i. The second and fourth weekend of every month, from Friday at 5 P.M. until Sunday at 6 P.M.
 ii. If a school holiday falls on a Monday following father's weekend, access shall be extended to Monday evening at 6 P.M.
 iii. Wednesdays from 5 P.M. to 7 P.M. during the first and third weeks of each month.
 iv. Two weeks of uninterrupted vacation during July or August. Mother shall have a similar uninterrupted two week period during the summer months. Father's dates are to be chosen by him and communicated in writing to mother no less than sixty days in advance.
 v. Parents shall alternate Memorial Day, Labor Day, Thanksgiving Day, Christmas Eve and Christmas Day, and Katherine's birthday. Mother will establish the alternating schedule. Father shall have Father's Day. Mother shall have Mother's Day.
 vi. This court specifically empowers, and encourages, the parties to vary any portion of the access schedule in any mutually agreeable manner.
 vii. All communication regarding the access schedule is to be conducted solely between the adults.
3. CHILD SUPPORT
a. Defendant father shall pay plaintiff mother child support in the amount of $114 a week.
b. The Child Support Guidelines call for a payment of $148 a week for the minor child of this marriage. However, the defendant father supports Kari, his daughter of his former marriage. This court thus finds the application of the Guideline sum for Katherine to be inappropriate, for if $148 were to be added to the plaintiff mother's net and deducted from Mr. Drumm's net, the results would be new nets of $520 for Mrs. Drumm and $452 for Mr. Drumm, with each of them charged with the responsibility of supporting one minor child. In this specific fact situation the court finds the financial capacity of each of these parents to support their child should be balanced. The payment ordered achieves that balance. CT Page 10645
4. MEDICAL INSURANCE
a. The defendant father shall continue to maintain medical insurance coverage for the minor child.
b. All unreimbursed medical, dental, optical, orthodontia, prescription and psychological expenses or other expenses related to the physical and mental health of the minor child shall be divided equally between the parties.
c. Section 46b-84(c) of the Connecticut General Statutes shall apply. Plaintiff mother's attorney shall supply her with a copy of that statute and review it with her in detail.
5. TAX EXEMPTION FOR THE MINOR CHILD
a. Plaintiff mother will be entitled to claim Katherine as her tax exemption.
b. Defendant father is directed to complete any tax documents necessary to achieve that result.
6. 140 POST ROAD, DANBURY, CONNECTICUT
a. Plaintiff shall forthwith transfer her title in the family home to defendant husband by quit claim deed.
b. Defendant husband shall be responsible for and save plaintiff wife harmless from all debts associated with the family home, which shall include, but not be limited to, the notes and mortgages to Union Savings Bank and Norwalk Savings Society, taxes to the City of Danbury and the Lake Waubeeka Association, loans from Bob and Paul Drumm, a debt to Deicke Brothers, and all other claims, demand and suits by anyone holding or claiming a lien on the aforesaid premises.
c. Plaintiff shall receive $20,000 for the transfer of her interest in said family home.
d. Plaintiff shall prepare, and defendant shall sign, a mortgage deed and note for defendant's signature simultaneously with the quit claim deed transfer, containing the traditional clauses, in the principle sum of $20,000 payable in 60 equal monthly payments of $405.53 each, beginning December 1, 1996, and on the first day of each succeeding month thereafter.
e. Should the home not provide security for the payment of the $20,000, award cited above, defendant shall never-the-less be responsible for that sum to plaintiff. CT Page 10646
7. ALIMONY
Neither party shall pay alimony to the other.
8. PERSONALTY
The parties shall retain ownership of all those items presently in their possession.
9. DEBTS
Each of the parties shall be responsible for the debts listed on their financial affidavit and shall hold the other harmless therefrom.
10. CHILD SUPPORT ARREARAGE
a. The court finds defendant owes plaintiff a child support arrearage of $940 as of November 28, 1991.
b. Defendant shall pay plaintiff the arrearage at the rate of $20 per week until it is paid in full, beginning forthwith.
11. IRS REFUND
a. Defendant received the parties joint Federal Income Tax refund for the year 1989 in the amount of $1025.
b. Defendant shall forthwith pay plaintiff one-half thereof, or $512.50.
12. OTHER ASSETS
a. Defendant shall retain title to the backhoe.
b. Defendant shall forthwith transfer all his interest in his Operating Engineers Local 30 Annuity Fund to plaintiff.
c. Each of the parties shall have title to the automobile currently used by them: plaintiff, the 1986 Ford Escort and defendant, the 1985 Nissan.
d. Plaintiff shall retain title to those savings accounts in her name and Katherine's in the Union Savings Bank and the Savings Bank of Danbury, which accounts are reported to total $2661.22 on plaintiff's financial affidavit.
13. COUNSEL FOR THE MINOR CHILD
a. Counsel for the minor child, Sharon wicks Dornfeld, is awarded a fee of $4567.50 for her services. CT Page 10647
b. Each party is responsible for one-half of that fee, or $2283.75, payable within 30 days hereof.
14. NEGOTIATION
a. The court recognizes that the parties may have mutual preferences that have not been revealed to the court during the trial or which the court may otherwise have inadvertently thwarted.
b. Final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by. Therefore, the court empowers the parties to confer and to seek mutually acceptable variations of the court's orders.
c. Any such mutually negotiated modification are to be submitted directly to the undersigned in written form, signed by all three counsel as well as the plaintiff and the defendant not later than thirty days after this judgment, without costs and without the need to establish a substantial change of circumstances.
d. Beyond that date, or before any other court, modifications shall be by the traditional route and must meet all the more formal requirements.
15. APPEAL
All foregoing orders with respect to custody and visitation shall stand and operate as interim orders of this court during the pendency of any appeal.
JOSEPH L. STEINBERG, JUDGE